## IN THE UNITED STATE DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | |
|---|---|
| LEO FERRETTI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NOVA SOUTHEASTERN UNIVERSITY, INC., <br><br> Defendant. | Case No. 0:20-cv-61431 <br><br> **CLASS REPRESENTATION** <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff LEO FERRETTI, individually and on behalf of all other similarly-situated persons, brings this class action complaint against Nova Southeastern University, Inc. Mr. Ferretti makes the following allegations upon personal knowledge as to his own acts and upon information and belief and his attorneys' investigation as to all other matters.

### NATURE OF THE ACTION

1. This is a class action brought on behalf of Plaintiff and other similarly-situated persons ("the Class"), who paid tuition and fees to Nova Southeastern University ("the University" or "NSU"). Plaintiff and the Class (i) did not receive their bargained-for educational and other services and experiences, for which they paid; and (ii) have not been refunded a properly prorated portion of their tuition and fees after NSU abruptly ceased providing such services to students during the spring of 2020 due to the spread of Coronavirus Disease 2019 ("COVID-19").

2. As a result of Defendant's wrongful acts and unfair business practices alleged herein, Plaintiff and the Class have systematically been denied, and therefore seek: (i) a proper, prorated refund or reimbursement for the unused services for which they paid in the form of

Levin Papantonio Thomas Mitchell Rafferty & Proctor • 316 S. Baylen St. 6th Floor • Pensacola, FL 32502

various university fees; and (ii) a proper, prorated refund or reimbursement for the decreased value of the education they received as a result of classes transitioning from in-person/on-campus instruction to an entirely remote, virtual learning format.

## PARTIES

3.    Plaintiff Leo Ferretti is a resident of Miami, Florida. Mr. Ferretti graduated from Nova Southeastern University's College of Osteopathic Medicine in May, 2020.

4.    Defendant Nova Southeastern University, Inc., is a private corporation incorporated under the laws of the State of Florida (FEI/EIN Number 59-1083502). Its principal place of business is located at 3301 College Ave., Fort Lauderdale, Florida 33314-7796, and it may be served with process through its registered agent Panza, Maurer & Maynard, P.A. at 2400 East Commercial Blvd., Fort Lauderdale, Florida 33308.

5.    Defendant owns and operates Nova Southeastern University in Fort Lauderdale, Florida, as well as regional campuses across Florida and in Puerto Rico.

## JURISDICTION AND VENUE

6.    **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, excluding interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

7.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because Defendant has continuous and systematic general business contacts in this State and District. Defendant's principal place of business is located within this District and it could be said to be "at home" in this District and Division.

8.    **Venue.** Venue is proper in this judicial District under 28 U.S.C. §1391(b)(1)-(2) because Defendant resides in this District and is a citizen of the State of Florida and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

9.      NSU offers more than 150 certificate, bachelor's, master's, and Ph.D. programs in fields ranging from Accounting to Theatre.[1] According to NSU, "[f]ew other universities span NSU's range of education on a single campus ... from innovative undergraduate degree programs to master's and doctoral programs in law, medicine, nursing, dentistry, business, oceanography, psychology, education, computer and information sciences, and more."[2]

10.     NSU is an accredited, private university in Florida with seven regional campuses throughout Florida and one in Puerto Rico.[3] NSU enrolls approximately 20,000 undergraduate and graduate students across a range of both on-campus and online programs.

11.     Approximately 92% of NSU's 5,000 undergraduate students and 60% of NSU's 15,000 graduate students are enrolled for in-person instruction.[4]

12.     NSU offers hands-on instruction through a wide array of labs, research institutes, museums and libraries. NSU, rightfully so, places great emphasis on the value of experiential education by requiring all students to complete the Experiential Education & Learning curriculum.

> Gaining diverse, meaningful experiences as a NSU student might be *the most valuable part of your college education*. Through Experiential Education and Learning (ExEL) at NSU, you will be exposed to a world of **hands-on** opportunities that enrich your academic life while helping you reach your professional and personal goals. As part of ExEL, you can choose to conduct **research** with a faculty mentor, enroll in courses that take you far **beyond the classroom**, test drive your future career with an **internship**, give back to your community as a **volunteer**, or earn credits while **studying abroad**.[5]

---

[1] NSU, *Degree Finder*, https://www.nova.edu/degrees.html
[2] NSU, *Undergraduate*, https://www.nova.edu/undergraduate/academics/index.html
[3] NSU, *Regional campuses*, https://www.nova.edu/campuses/index.html
[4] National Center for Education Statistics. https://nces.ed.gov/collegenavigator/?q=nova+southeastern+university&s=FL&l=94&ct=2&id=136215#enrolmt
[5] NSU, *Experiential Education & Learning,* https://www.nova.edu/academic-affairs/experiential-learning/index.html (italics added, bold in original)

13.     NSU charges students fees and tuition for their education and for on-campus services and facilities.

14.     Students pay an assortment of fees including registration fees, student services fees, laboratory fees, and course-specific fees.

15.     Defendant maintains records enabling it to identify and quantify by student all fees paid for the Spring and Summer 2020 terms at NSU.

16.     NSU offers undergraduates flat-rate tuition of $15,575 for 12-18 credits. Each credit under 12 hours or in excess of 18 hours is $1,038.[6] Graduate students tuition varies by program.[7]

17.     Defendant maintains records enabling it to identify and quantify by student all tuition paid for the Spring and Summer 2020 terms at all NSU institutions.

18.     Students enrolled in on-campus classes get more than their online peers, including access to facilities, equipment, events, and other on-campus services and opportunities.

19.     Like all universities, NSU does not just sell credit hours and diplomas like some common consumer commodity. It sells an experience—one enriched both personally and academically through hands-on experiential learning, social interaction, and involvement with faculty and other students. Images from its website graphically illustrate:[8]



---

[6] NSU, *Undergraduate Tuition and Fees*, https://www.nova.edu/undergraduate/university-tuition-and-fees.html
[7] NSU, *Graduate and Professional*, https://osteopathic.nova.edu/masters/tuition.html
[8] NSU, *Student Life*, https://www.nova.edu/student-life/index.html





20.    NSU also boasts a high-tech, interactive campus featuring labs, research institutes, libraries and museums.[9]



[9] NSU, *Research*, https://www.nova.edu/research/areas/index.html



21.    Thousands of NSU students were guaranteed such benefits and experiences when Plaintiff and Class members paid tuition to NSU for on-campus, rather than online, courses. However, since mid-March 2020, these students have been denied the full benefits for which Plaintiff and Class members paid.

22.    In response to COVID-19 NSU announced on or about March 13, 2020, that it was suspending all classes and that all classes would be resumed online beginning March 23, 2020.[10]

23.    Despite suspending all in-person classes and labs since March 13, 2020, forcing students who paid for on-campus programs into less valuable online versions, and denying students access to facilities, resources, and services for which their fees and tuition paid, the University has not offered to refund any amount of tuition or fees to Plaintiff or the Class.

24.    Defendant refuses to refund or reimburse Plaintiff and the Class any portion of the fees and tuition they paid for in-person education and services that they are no longer being provided.

25.    NSU offers both undergraduate and graduate programs, as well as certificates in everything from Bachelor of Art in Dance to Doctor of Medicine. Of the 241 programs of study offered, only 67 were available online prior to March, 2020.

---

[10] NSU, *Stay Informed*, CORONAVIRUS (COVID-19) (March 13, 2020), https://www.nova.edu/coronavirus/index.html

In 1972, NSU pioneered distance education by offering the first doctoral distance education program in the country. Recognizing a need for programs that are accessible to working professionals, NSU quickly expanded its online course offerings. Today, NSU remains a leader in online education. Online courses offer NSU students the ability to access all course content and complete a wide range of activities, including frequent student-teacher and student-student communication.[11]

26.     NSU's tuition is relatively high for a private, nonprofit university, a fact that NSU justifies by delivering "academic excellence":

Academic excellence is the provision of the highest quality educational and learning experiences made possible by academically and professionally qualified and skilled instructional faculty and staff, opportunities for contextual learning, state-of-the-art facilities, beautiful surroundings, and effective resources necessary to support learning at the highest level. Additionally, academic excellence reflects the successful relationship between engaged learners and outstanding instructional faculty and staff.[12]

27.     NSU justifies its high undergraduate and graduate tuition because of the hands-on, experiential learning offered to students through the ExEL (Experiential Education & Learning) program.[13]

28.     For instance, NSU advertises state-of-the-art facilities and opportunities for students to develop the skills, knowledge, networks and experience, necessary to thrive in their fields. On ExEL webpage, NSU hosts a video that represents opportunities for faculty-mentored research, experiential coursework, professional growth/internships, community engagement/service, and travel exploration/study abroad.[14]

29.     Throughout its website, NSU portrays students working in the field, clinics, labs, and much more.

---

[11] NSU, *Academics, Distance Education*, https://www.nova.edu/academics/distance-education.html; See also NSU Student Handbook at 4 ("NSU Core Values")
[12] NSU, *About NSU, Core Values*, https://www.nova.edu/about/mission.html
[13] NSU, *Experiential Education and Learni*ng, https://www.nova.edu/academic-affairs/experiential-learning/index.html
[14] *Id.*

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502





30.    NSU's on-campus programs are marketed as opportunities for students to develop academically, socially and intellectually on a beach-front campus with state-of-the art facilities.

> Imagine wearing shorts and flip-flops year-round, taking trips to the beach, experiencing diverse cultures, and surrounding yourself with some of the best weather in the world. Sounds pretty good, doesn't it? Guess what? That's the place NSU calls home. With an average temperature of 77°F when you're not in class, you can be outdoors all year round. You'll need that time to experience everything South Florida has to offer. There's sunbathing, bike riding, fishing, boating, and surfing. You can enjoy world-class food from around the world and the best in arts and entertainment.[15]

The NSU Student Handbook's "Statement on Student Rights" identifies actually declares that students have "the right to engage in service opportunities that enhance learning outcomes, **both on and off campus**."[16]

---

[15] NSU, *South Florida Living*, https://www.nova.edu/student-life/south-florida.html.
[16] NSU Student Handbook at 6, https://www.nova.edu/studentaffairs/forms/studenthbk_2019-2020.pdf

31.     NSU also touts small class sizes, highly credentialed professors, and "[s]tate-of-the-art facilities [that] include the **latest classroom technology, advanced laboratories, and the best research libraries.**"[17] NSU's 2019-2020 Student Handbook says the school's mission "is to offer a diverse array of innovative academic programs that complement **on-campus educational opportunities** and resources with accessible, distance-learning programs to foster academic excellence, intellectual inquiry, leadership, research, and commitment to community through engagement of students and faculty members in a dynamic, lifelong learning environment."[18]

32.     Of course, programs offered exclusively online do not provide this level of access to equipment facilities, technology, and other resources.

33.     By paying such high tuition, students at NSU expect to get more. In addition to being able to take more hands-on, interactive coursework like that described above, they also can use recreational facilities, watch one of NSUs 17 NCAA sports teams compete or attend any of the artistic, musical or theatrical productions on campus.[19]

34.     The on-campus experience is not limited to academics. NSU touts the rich and robust social experience that students can expect from on-campus education. "A big part of an enjoyable, well-rounded college experience happens outside the classroom. It is the opportunity to explore new interests and discover who you are. We're here to help you do just that."[20]



---

[17] NSU, *Undergraduate Academic Programs*, https://www.nova.edu/undergraduate/academics/ index.html
[18] NSU Student Handbook at 4, https://www.nova.edu/studentaffairs/forms/studenthbk_2019-2020.pdf (emphasis added)
[19] NSU, *Student Life*, https://www.nova.edu/student-life/index.html
[20] NSU, *Student Life, Clubs and Organizations*, https://www.nova.edu/student-life/clubs-organizations.html

35.    NSU offers more than 100 on-campus clubs and organizations, including student government, Greek life, pre-professional societies, religious organizations, honors societies and intramural sports.[21] In short, unlike their peers enrolled exclusively in online courses, students who take on-campus courses have unique access to professional facilities and equipment, face-to-face classroom instruction; state-of-the art labs and simulators; in-person networking events; guest lectures, and the opportunity for a rich social experience, among other things.

36.    In exchange for the promise of an in-person education and on-campus services and opportunities, Plaintiff paid more than $27,000 in tuition and more than $1,000 in fees for the 2020 Spring term.

37.    Plaintiff incurred loan debt to cover his tuition and costs.

38.    Plaintiff has not attended any in-person classes since mid-March, 2020. Instead, all his classes were moved online. Clinical rotations were suspended on March 14 and students were instead provided with online modules about public health and other topics. Students were given quizzes and writing assignments that were graded, but they were provided with no feedback.

39.    Although Plaintiff has been deprived of the in-person classes and an on-campus experience for which he paid, he has not been offered and has not received any refund or reimbursement for any portion of the tuition or fees that he paid.

40.    By closing its campus, Defendant has failed to deliver all of the educational services, facilities, technology, programming, activities, and other resources for which Plaintiff and Class members contracted when they made annual fee and tuition payments to the University.

41.    Plaintiff and the Class therefore are entitled to a prorated refund of tuition for the duration of NSU's COVID-19-related closure for the services that Defendant has not provided, or which Defendant has provided in a severely diminished manner.

---

[21] NSU, *Student Life, Clubs and Organizations*, https://www.nova.edu/student-life/clubs-organizations.html

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

42.    The tuition that Plaintiff and Class members paid for on-campus programs was predicated on students' routine interaction with and feedback from peers, mentors, professors, and guest lecturers; access to equipment, technology, facilities, and laboratories; and participation in extracurricular groups and learning, among other things—the services and opportunities that they now are denied, while still being forced to pay for them.

43.    Not only has NSU denied students access to these tangible services and benefits that are only available on-campus, it forced students into online classes that are substandard and objectively less valuable than those for which Plaintiff and Class members paid.

44.    The online courses into which on-campus students have been forced were not *designed* to be administered online. In NSU's preexisting and exclusively online programs, courses were developed specifically for online delivery. For example, students involved in distance education online courses get: faculty and student discussion forums with threaded bulletin boards, real-time electronic classrooms with graphical presentations and audio, online submission of assignments in multimedia formats, a directory for publishing assignments and resources to the Web, and access to the electronic library and online database.[22]

45.    However, students who enrolled in and paid for on-campus programs have been forced into classes that were shoehorned into an online format at the last-minute. As a result, faculty had to scramble mid-course to reinvent the wheel and, as a result, communication and learning suffered.

46.    NSU also acknowledged that some courses might not even be available during the spring and summer terms: "Please note, there may be some clinical programs, studios, experiential courses, clinical hours, or labs where online delivery is not feasible or permissible by accrediting boards, but those will be specific cases."[23]

---

[22] NSU, *Online Courses*, ACADEMICS, https://www.nova.edu/academics/distance-education.html
[23] NSU, *Stay Informed*, CORONAVIRUS(COVID-19) (May 1, 2020), https://www.nova.edu/coronavirus/index.html

47.     NSU offers hundreds of undergraduate and graduate courses across 18 colleges, schools and centers, each comprised of a core curriculum and dozens of major- and minor-specific study. All of the courses being offered during the Spring 2020 term had to be converted mid-semester, in a matter of days, to a virtual format for which they were not designed.

48.     Even if the transition to online delivery had been seamless, the fact remains—as evidenced by the difference in experiences and opportunities between online and in-person attendance—online courses are less valuable than the on-campus programs for which Plaintiff and Class members paid.

49.     Plaintiff and the Class were thrust into less valuable online courses on short notice. Even for courses that NSU does offer both online and on-campus, the sudden, mid-course shift to remote delivery was disruptive and challenging.

50.     The end result is that Plaintiff and the Class paid received less than they paid for. Rather than being provided online courses that were conceived as such, well-planned, and designed for online instruction from start-to-finish, they were thrown into haphazard virtual meetings without proper planning or purpose.

51.     Plaintiff and Class deserve a partial refund because NSU forced them into second-rate substitute classes that are inferior even to the online instruction that NSU typically offers to its exclusively online learners.

52.     In paying their tuition, Plaintiff and the Class contracted and paid for high-quality, in-person instruction, as well as materials, labs, access to technology, and other associated services. By abruptly closing down the school and forcing students into substandard, poorly planned, and poorly executed online courses, NSU has not upheld its end of the bargain, and refuses to issue prorated refunds to Plaintiff and the Class.

53.     Plaintiff and the Class have lost the benefits of the education, facilities, services, extra-curricular opportunities, and other experiences that Defendant promised. Despite failing to fulfill its obligations, Defendant is unlawfully retaining a portion of Plaintiff's tuition and fees.

54.     Defendant presumably took measures it viewed as protecting the public health; but Defendant must acknowledge that the education and services it has provided and continues to provide lack the full value of those for which Plaintiff and the Class paid.

55.     Essentially, Plaintiff and the Class paid Defendant for access to buildings, labs, and facilities that students can no longer enter; equipment and technology they can no longer use; parking spaces they cannot access; and extra-curricular groups in which they can no longer participate, among other things.

56.     Thus, Plaintiff and Class have paid Defendant for a level of instruction, course content, and feedback, which, due to the abrupt and forced shift to online learning, are no longer being delivered. Defendant is profiting from COVID-19 by asking students and their families to bear the financial brunt of the pandemic. The result is a windfall to Defendant.

57.     Plaintiff and the Class have not realized and cannot realize the full value of the education, services, and other experiences that they were promised and for which they paid.

58.     Despite failing to fulfill its obligations to students, Defendant has failed to refund or reimburse Plaintiff and the Class the prorated portion of tuition and fees necessary to compensate them for the difference in value between what they paid for and what they received.

59.     Plaintiff and the Class, in paying tuition required by Defendant, reasonably expected education and services of a particular quality and value commensurate with the amount of tuition and fees each paid.

60.     However, Plaintiff and the Class have received—and will continue to receive during the 2020 Summer term—education and services of a different and substantially lesser value, i.e., one with a higher effective cost, than they reasonably expected.

61.     Accordingly, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.

62.     Plaintiff and the Class effectively paid more than the market value represented by bargained-for price of their tuition and costs. Plaintiff and the Class bargained with Defendant on

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

a particular market value for a particular character and level of education and services. But because Defendant delivered only a portion of their reasonably expected value, Plaintiff and the Class paid a higher price than the fair market price to which they and Defendant had agreed, and received a level of education and services that was of lesser value than was represented to, and reasonably anticipated by, Plaintiff and the Class.

63.     For these reasons, the education and services delivered are worth less than what Plaintiff and the Class paid for them.

64.     Plaintiff and the Class lost money by not receiving what they reasonably believed they were paying for while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it led them to believe they would receive.

65.     Plaintiff and the Class are entitled to disgorgement of those portions of their payments for unused services and are entitled to a prorated refund of their tuition for classes that are worth less than they paid.

66.     Defendant's refusal to properly refund tuition impacts all Class members and their losses are capable of calculation on a class-wide or a subclass basis.

67.     Defendant's refusal to properly refund fees and other costs impacts all Class members and their losses are capable of calculation on a class-wide or a subclass basis.

## CLASS ACTION ALLEGATIONS

68.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and (c)(4), Plaintiff brings this action for damages, equitable relief, and disgorgement on behalf of himself and the following Class and Subclass:

> *The Class:* All persons who paid on behalf of themselves or another tuition or other costs to Nova Southeastern University for an in-person class or classes to be conducted during the 2020 Spring or Summer terms.

> *The Florida Subclass:* All residents of the State of Florida who paid on behalf of themselves or another tuition or other costs to Nova Southeastern University for an in-person class or classes to be conducted during the 2020 Spring or Summer terms.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

69. Throughout this complaint, unless specifically distinguished, the term "Class" refers jointly and severally to the Class and the Florida Subclass.

**Prerequisites: Numerosity—FRCP 23(a)(1).**

70. The members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

71. Although the precise number of Class members is unknown to Plaintiff, a good-faith investigation reveals that approximately 21,000 students are enrolled at Defendant's institution. Even if this estimate varies considerably from actual enrollment, it supports the contention that the Class is comprised of thousands of geographically dispersed members who cannot be practicably joined.

72. The true size of the class is readily ascertainable through enrollment records maintained by Defendant and there is little question joinder is impracticable.

**Prerequisites: Commonality—FRCP 23(a)(2).**

73. This action involves questions of law and fact common to the Class, including:

a. the general, underlying course of conduct giving rise to the action; namely, Defendant's response to COVID-19 and its systemic policy decision not to reimburse or refund the Class as alleged herein;

b. whether Defendant accepted monies from the Class, and in what amounts;

c. whether Defendant retained money from the Class for services it did not render, or only partially rendered;

d. whether Defendant entered into contracts, express or implied, with the Class and, if so, the terms of such contracts;

e. whether Defendant breached any such contracts with the Class through its systemic policy decisions regarding reimbursement;

f. whether Defendant benefited from the monies accepted from the Class and, specifically, whether Defendant was unjustly enriched and/or whether Defendant converted property belonging to Class members or otherwise acted tortiously or inequitably based on its systemic policy decisions regarding reimbursement;

g. whether the value of the educational and other services Defendant provided to the Class was commensurate the amount of money Class members paid for them;

h.  whether certification of the Class is appropriate; and

i.  whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief.

74.  These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class members' claims.

75.  **Predominance.** While there may be slight variations between Class members' claims—*e.g.*, differences in the dollar amounts paid in tuition or fees—the factual and legal issues identified above (a) remain common to the Class, (b) arise from a common course of conduct and systemic policy decisions made by Defendant, (c) predominate in number and importance over questions that may not be common to the class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

**Prerequisites: Typicality—FRCP 23(a)(3).**

76.  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for tuition and other routine fees associated with the 2020 Spring and/or Summer terms, but were not provided the full range or value of the services for which they paid.

77.  Each suffered damages in the form of lost tuition and other monies paid to Defendant, and the claims all arise from a single course of conduct by Defendant and each Class member would individually make similar legal and factual arguments to establish Defendant's liability.

78.  There are no defenses available that are unique to the Plaintiff.

**Prerequisites: Adequacy of Representation—FRCP 23(a)(4).**

79.  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members.

80.    Plaintiff has retained counsel competent and experienced in complex litigation, including class actions, and he intends to prosecute this action vigorously on behalf of the Class.

81.    Plaintiff has no interests that are antagonistic to those of the Class and he will fairly and adequately protect the proposed Class members' rights, as will counsel.

**Superiority—FRCP23(b)(3).**

82.    A class action is a superior means to ensure the fair and efficient adjudication of this case.

83.    The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against Defendant so that making the class whole in the absence of a class action is unlikely and impracticable.

84.    This also means class members have relatively less interest in individually controlling the prosecution of separate actions and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action. Indeed, upon information and belief—based upon searches of PACER and the Florida circuit civil docket for Broward County (where Defendant maintains its principal place of business)—no other legal actions have been brought against Defendant concerning the subject matter of this action.

85.    Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

86.    The judicial system has no interest in burdening a number of courts when the claims of this highly cohesive class can be fairly and efficiently concentrated and managed by this Court.

87.    Finally, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and to the courts, including this Court. By proceeding as a class action, the claims at issue can be managed efficiently through economies of scale.

Particular Issues—FRCP 23(c)(4).

88.    Any or all of the issues identified in ¶ 73(a)-(i) are appropriate for certification pursuant to Fed. R. Civ. P. 23(c)(4) because each is particular and common to the Class and the resolution of each or all would materially advance the disposition of this action and the parties' interests.

89.    Certification of particular issues would move the litigation forward efficiently, saving money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

90.    For the reasons set forth above, these issues predominate in number and importance over questions that may not be common to the class.

## COUNT I
### Breach of Contract

91.    Plaintiff repeats, realleges, and incorporates ¶¶ 1-90 as if fully alleged herein.

92.    Plaintiff brings this claim individually and on behalf of the Class and the Florida Subclass (referred to as the Class).

93.    Plaintiff and the Class had the capacity to enter into and in fact entered into binding contracts with Defendant.

94.    Plaintiff and the Class members' contracts with Defendant provide that Plaintiff and the Class would pay tuition in exchange for on-campus educational, extracurricular, and social facilities and experiences.

95.    Specifically, Defendant offered and Plaintiff and the Class accepted—in exchange for paying their respective tuition amounts and other costs—on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms.

96.    These contracts were formed by multiple documents when students bid by formally registering for courses offered by Defendant, in light of the quoted tuition pertaining to such registration, and Defendant thereafter accepted those bids, or registrations, by sending invoices

(bills) for tuition to Plaintiff and Class members, which Plaintiff and the Class members accepted and paid.

97.    As part of their contracts with Defendant, and, in exchange for adequate consideration that Plaintiff and the Class provided, Defendant promised to provide on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms to Plaintiff and the Class.

98.    Ever since closing its campus in mid-March 2020, Defendant has failed to provide the services that it was obligated to provide under its contracts with Plaintiff and the proposed Class. Defendant has retained tuition payments and fees paid by Plaintiff and the Class without providing them the full range or value of the promised benefits.

99.    By contrast, Plaintiff and the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition and other costs, and they have otherwise satisfied all conditions precedent to the maintenance of this action.

100.    Defendant's breach of these contracts is material in each instance and has resulted in Plaintiff and members of the Class suffering losses and damages including, but not limited to, those of the sort described in ¶¶ 55-65.

101.    The tuition and other payments that Plaintiff and the Class paid were intended to cover in-person educational and extra-curricular services. Defendant, however, has improperly retained the funds Plaintiff and the proposed Class paid without providing them the full range or value of the services and other benefits due under the contracts.

102.    Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

103.    WHEREFORE, Plaintiff and the Class seek all damages and equitable relief to which they may be entitled, including refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of

the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class contracted and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT II
### Contract Implied in Law (Restitution/ Quasi-Contract)

104.   Plaintiff repeats, realleges, and incorporates ¶¶ 1-90 as if fully alleged herein.

105.   Plaintiff brings this claim individually and on behalf of the Class and the Florida Subclass (referred to as the Class).

106.   Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and other payments for the 2020 Spring and Summer terms.

107.   Defendant was aware of this benefit, voluntarily accepted it, and has retained this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

108.   For the reasons set forth in this complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

109.   Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

110.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT III
**Unjust Enrichment**

111.   Plaintiff repeats, realleges, and incorporates ¶¶ 1-90 as if fully alleged herein.

112.   Plaintiff brings this claim individually and on behalf of the Class and the Florida Subclass (referred to as the Class).

113.   This Count is alleged in the alternative to the claims set forth for legal relief.

114.   Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and other payments for the 2020 Spring and Summer terms.

115.   Defendant was aware of this benefit, voluntarily accepted it, and has retained and appreciated this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

116.   For the reasons set forth in this complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

117.   Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

118.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT IV
**Conversion**

119.   Plaintiff repeats, realleges, and incorporates ¶¶ 1-90 as if fully alleged herein.

120.   Plaintiff brings this claim individually and on behalf of the Class and the Florida Subclass (referred to as the Class).

121.   Defendant has wrongfully asserted dominion over the monies Plaintiff and the Class paid in the form of tuition and other fees and costs for on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms.

122.   Plaintiff and the Class maintained a property interest when such monies were paid over to Defendant and Defendant's retention of such monies without delivering a commensurate level of on-campus educational and social facilities, services, and experiences, as described in this complaint, renders Defendant's retention of and dominion over such monies inconsistent with Plaintiff and the Class members' interest in such monies, or the portion of those monies that would be commensurate with the value of the on-campus educational and social facilities, services, and experiences that Defendant failed to deliver or cannot deliver.

123.   Likewise, by paying such monies to Defendant, Plaintiff and the Class were vested with a right to a level of on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms commensurate with the amount of monies paid.

124.   Defendant's failure to provide the level of on-campus educational and social facilities, services, and experiences as described in this complaint, for which Plaintiff and the Class members paid, and Defendant's retention of all monies paid despite this failure on its part, interferes with the Plaintiff's and the Class members' right to and interest in a level of on-campus educational and social facilities, services, and experiences commensurate with the amount of monies paid.

125.   Defendant's interference with and dominion over Plaintiff's and the Class members' property and property interests, as described herein, entitles Plaintiff and the Class to damages equal to the full value of their property and property interests over which Defendant has wrongfully exercised dominion.

126.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## PRAYER FOR RELIEF

127.   Plaintiff, individually and on behalf of the Class, respectfully requests that the Court provide the following relief in their favor against Defendant:

a.   certifying the Class and/or Florida Subclass ("the Class") as requested herein, designating Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

b.   alternatively, certifying one or more issues identified herein pursuant to Fed. R. Civ. P. 23(c)(4) as requested herein, designating Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

c.   declaring that Defendant is financially responsible for notifying the Class of the pendency of this suit;

d.   declaring that Defendant has wrongfully retained monies paid by the Class;

e.   awarding money damages and losses for breach of contract and on any other grounds permitted by law or equity;

f.   awarding injunctive relief, declaratory relief, restitution, and disgorgement as permitted by law or equity;

g.   awarding Plaintiff's reasonable attorney's fees, costs, and expenses;

h.   awarding pre- and post-judgment interest on any amounts awarded, to the extent permitted in law or equity; and

i.   awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Individually and on behalf of the Class, Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted: July 15, 2020.

*s/Matthew D. Schultz*
Matthew D. Schultz (FBN 0640328)
**LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.**
mschultz@levinlaw.com
Rebecca K. Timmons (FBN 121701)
btimmons@levinlaw.com
Brenton J. Goodman (FBN 126153)
bgoodman@levinlaw.com
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140
Fax: (850) 436-6140

*s/ Patrick Madden*
Patrick Madden (PHV forthcoming)
pmadden@bm.net
**BERGER MONTAGUE, PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000

*Counsel for Plaintiff and the Proposed Class*