UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-61431-RAR

**LEO FERRETTI**, *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

**NOVA SOUTHEASTERN UNIVERSITY, INC.**,

    Defendant.
_____/

**ORDER DENYING MOTION FOR DISPOSITIVE RELIEF UNDER
FLORIDA STATUTE SECTION 768.39**

    Nearly every segment of society has been impacted, in one way or another, by the COVID-19 pandemic. Higher education is no exception. Throughout the state of Florida, many colleges and universities took measures to promote the health and safety of their students, faculty, and staff in the early days of the pandemic. These efforts—which often involved the online delivery of educational services and limited access to campus facilities—have been met with increased litigation. To stem this tide of COVID-related litigation, the Florida Legislature and the Governor responded by immunizing colleges and universities from liability via the passage of section 768.39—the Florida Immunity Statute for Educational Institutions for Actions Related to the COVID-19 Pandemic ("Immunity Statute").

    However, despite its laudable purpose, the Immunity Statute impermissibly—and unconstitutionally—impinges upon the property rights of individual plaintiffs. Thus, as explained herein, Defendant's Motion for Dispositive Relief Under Florida Statute Section

768.39 [ECF No. 66] ("Motion"), which seeks to dismiss Plaintiff's claims with prejudice pursuant to the Immunity Statute, is **DENIED**.[1]

## BACKGROUND

This action joins a flurry of cases brought by disgruntled college students against their schools for moving classes online in response to a global pandemic. In 2020, Plaintiff Leo Ferretti was enrolled at Defendant Nova Southeastern University as a full-time undergraduate student during the winter academic term. First Am. Compl. ("FAC") [ECF No. 25] ¶ 1. Defendant is a private, for-profit educational institution based in Fort Lauderdale, Florida, that offers a variety of course delivery options to its approximately 25,000 students. *Id.* ¶¶ 12, 13, 24.

Defendant's undergraduate tuition for the 2019–20 academic year was $15,575 per semester. FAC ¶ 21. In addition to the tuition, Defendant charges fees for explicitly delineated purposes, including a Student Services Fee of $250 per semester for students taking one to three credits or $500 per semester for students taking four or more credits. *Id.* Defendant describes the Student Services Fee as used "to help offset university expenses for classroom technology, labs, facilities, curriculum enhancement, parking technology, and other student services." *Id.* For the 2019–20 academic year, Defendant offered 242 degree programs. *Id.* ¶ 24. Students can apply to degree programs offered at one of Defendant's eight regional campuses in a "variety of formats including traditional day, evening, online, or off-campus." *Id.* Sixty-six of Defendant's degree programs are offered entirely online. *Id.*

---

[1] The Motion is ripe for adjudication. On September 7, 2021, Plaintiff filed his Response in Opposition [ECF No. 67] ("Response"), which raises constitutional challenges to the Immunity Statute. On September 20, 2021, Defendant filed its Reply in Support of the Motion [ECF No. 68] ("Reply"). Further, pursuant to 28 U.S.C. section 2403(b) and Federal Rule of Civil Procedure 5.1(b), the Court certified to the Attorney General of the State of Florida that the Immunity Statute has been challenged, [ECF No. 73], and the Attorney General declined to respond within the sixty-day period required by the certification.

Defendant differentiates between "face-to-face" and "online" instruction. FAC ¶ 29. Face-to-face classes may include some online instruction but principally comprise "regular classroom instruction." *Id.* Online students, by contrast, make use of "email, bulletin boards, chat rooms, electronic journals, synchronous conferencing tools, content-sharing tools, video lectures, and other digital and web-based tools and resources" without any "classroom instruction." *Id.* Some courses are "hybrid," which the Student Catalog describes as those in which students complete "a portion of activities in the on-ground classroom" and a portion online. *Id.*

In response to official guidance on the global COVID-19 pandemic, on March 13, 2020, Defendant suspended all in-person classes and announced it would resume instruction on March 23, 2020, exclusively online. FAC ¶ 2. All athletic events were canceled, dining and recreational facilities were closed, on-campus transportation was suspended, tutoring and testing services were unavailable, and no gatherings of more than fifty people were permitted at any university location. *Id.* Defendant did not reopen access to its on-campus, in-person facilities, events, or services, nor did it provide in-person instruction, through the end of the winter 2020 term. *Id.* ¶ 3.

Shortly after the winter term, Plaintiff filed his class action Complaint [ECF No. 1] on July 15, 2020, followed by his FAC [ECF No. 25] on September 25, 2020. The FAC alleges two counts: (1) breach of contract for unilaterally changing the terms of the parties' agreement by transitioning Plaintiff from an on-campus program to an online program, and (2) unjust enrichment for retaining the full benefit of Plaintiff's tuition, which was charged at the rate for full on-campus instruction. FAC ¶¶ 100–132. On October 16, 2020, Defendant filed a motion to dismiss, which was fully briefed. [ECF Nos. 32, 39, 41].

While Defendant's motion to dismiss was pending, the Florida Legislature passed and the Governor signed the Immunity Statute, which became effective on July 1, 2021. Subsection (1) of the Immunity Statute sets out the Legislature's findings:

> The Legislature finds that during the COVID-19 public health emergency, educational institutions had little choice but to close or restrict access to their campuses in an effort to protect the health of their students, educators, staff, and communities. Despite these efforts, more than 120,000 cases of COVID-19 have been linked to colleges and universities nationwide, and the deaths of more than 100 college students have been attributed to the disease. The Legislature further finds that lawsuits against educational institutions based on their efforts to provide educational services while keeping students, faculty, staff, and communities safe during the COVID-19 public health emergency are without legal precedent. One court has even acknowledged that the "legal system is now feeling COVID-19's havoc with the current wave of class action lawsuits that seek tuition reimbursement related to forced online tutelage." Under these circumstances, the Legislature finds that there is an overpowering public necessity for, and no reasonable alternative to, providing educational institutions with liability protections against lawsuits seeking tuition or fee reimbursements or related damages resulting from the institutions changing the delivery of educational services, limiting access to facilities, or closing campuses during the COVID-19 public health emergency.

Fla. Stat. § 768.39(1). The statute defines "educational institution" to include both public and nonpublic postsecondary institutions. *Id.* § 768.39(2).

Subsection (3)(a) establishes an affirmative defense of immunity for any "educational institution that has taken reasonably necessary actions in compliance with federal, state, or local guidance to diminish the impact or the spread of COVID-19" against "any civil damages, equitable relief, or other remedies relating to such actions." Fla. Stat. § 768.39(3)(a). This provision sets out a non-exclusive list of "reasonably necessary actions taken while a state of emergency was declared": (1) "Shifting in-person instruction to online or remote instruction for any period of time;" (2) "Closing or modifying the provision of facilities, other than housing or

dining facilities, on the campus of the educational institution;" or (3) "Pausing or modifying ancillary student activities and services available through the educational institution." *Id.* Under the statute, "[t]he provision of in-person or on-campus education and related services" is deemed to have been "impossible" during any time in which educational institutions were responding to COVID-19, *id.* § 768.39(3)(b), and all reasonably necessary actions, as defined in subsection (3)(a), are "deemed justified" owing to "the various governmental orders and the need for educational institutions to protect their communities," *id.* § 768.39(3)(c).

In addition to its built-in affirmative defenses, the Immunity Statute includes a provision governing evidence: "invoices, catalogs, and general publications of an educational institution are not evidence of an express or implied contract to provide in-person or on-campus education and related services or access to facilities during the COVID-19 public health emergency" in a suit against an educational institution. Fla. Stat. § 768.39(4). It also codifies a heightened burden of proof in COVID-19 tuition cases, requiring that a plaintiff present clear and convincing evidence that he or she is entitled to damages. *Id.* § 768.39(7).

On July 15, 2021, the parties jointly moved to file briefs regarding the Immunity Statute. [ECF No. 63]. The Court granted leave for supplemental filing and removed the case from the trial calendar on July 19, 2021. [ECF Nos. 64, 65]. Defendant filed the instant Motion on August 16, 2021. [ECF No. 66].

## **ANALYSIS**

Defendant contends that subsection (3)(a) of the Immunity Statute immunizes it, as an educational institution, from Plaintiffs' claims. Mot. at 2–3. Defendant further argues that, even without that provision, Plaintiffs' claims are fatally undermined by other parts of the statute, including the evidentiary provision and the provision establishing a heightened burden of proof.

*Id.* at 3–7. Plaintiff counters that the Immunity Statute does not apply retroactively to actions pending when it became effective. Resp. at 1–9. Plaintiff alternatively challenges the constitutionality of the Immunity Statute, arguing that it impermissibly impairs the obligations of contract in violation of the United States and Florida Constitutions and violates the Access to Courts provision of the Florida Constitution. *Id.* at 9–17.

Because the Immunity Statute was enacted while this case was pending, the Court must determine whether and how it applies. This inquiry is governed by state law. *Rivera v. Wal-Mart Stores E.*, No. 10-956, 2011 WL 7575393, at *2 (M.D. Fla. Jan. 13, 2011). "A court ordinarily will apply the law in effect at the time it renders its decision." *Tallahassee Mem. Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1454 n.40 (11th Cir. 1987); *see also Joyner v. Monier Roof Tile, Inc.*, 784 F. Supp. 872, 877–78 (S.D. Fla. 1992) (holding that courts ordinarily apply new legislation in pending cases absent manifest injustice, and that "even where the inter[vening] law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect") (quoting *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 715 (1974) (alteration in original)). This is true even if the law was enacted after the events giving rise to the suit or during the pendency of the suit. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994); *Love v. State*, 286 So. 3d 177, 187 (Fla. 2019) ("This Court has echoed on multiple occasions *Landgraf's* notion of a retrospective law.").

Procedural or remedial statutes apply retroactively, *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1358 (Fla. 1994), whereas substantive measures are presumed to apply prospectively, *Metro. Dade Cnty. v. Chase Fed. Hous. Corp.*, 737 So. 2d 494, 499 (Fla. 1999). But even a substantive statute may be applied retroactively if it passes a two-pronged test: (1) whether—and to what extent—the Legislature intended for the statute to apply retroactively,

and (2) if intent is clearly expressed, whether retroactive application would violate constitutional principles. *Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 877 (Fla. 2010).

### A. The Immunity Statute Is Substantive

A statute is substantive if it "attaches new legal consequences to events completed before its enactment." *Chase Fed. Hous. Corp.*, 737 So. 2d at 499. A remedial statute, by contrast, is designed to correct, clarify, or validate; redress an existing grievance, problem, or injury; introduce provisions conducive to the public good; confer or change a remedy; or clarify legislative intent soon after controversies arise as to the interpretation of an act. *See Landgraf*, 511 U.S. at 244; *Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 339 (11th Cir. 1989); *Royale Green Condo. Ass'n v. Aspen Specialty Ins. Co.*, No. 07-21404, 2008 WL 2940803, at *3 (S.D. Fla. July 28, 2008); *Maronda Homes, Inc. v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1272 (Fla. 2013); *Chase Fed. Hous. Corp.*, 737 So. 2d at 503. A "[p]rocedural law concerns the means and methods to apply and enforce . . . duties and rights." *Shaps v. Provident Life & Accident Ins. Co.*, 826 So. 2d 250, 254 (Fla. 2002) (quoting *Alamo Rent-A-Car*, 632 So. 2d. at 1358). "A statute that merely 'relates to the admission of evidence' is generally considered procedural." *Bunin v. Matrixx Initiatives, Inc.*, 197 So. 3d 1109, 1110 (Fla. 4th DCA 2016) (quoting *Windom v. State*, 656 So. 2d 432, 439 (Fla. 1995)).

Defendant argues that the Immunity Statute is remedial because it "is expressly designed to redress an existing grievance and introduce legislation conducive to the public good" and it "operate[s] to further remedies and/or confirm rights already in existence." Mot. at 9. Defendant further contends that the statute was "passed mere months after, and in response to, *Salerno v. Florida S. Coll.*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020), wherein the court recognized the 'current wave of class action lawsuits that seek tuition reimbursement related to forced online

tutelage.'" *Id.* at 9–10.  Finally, Defendant argues that the statute is procedural because it "relates to evidence." *Id.* at 11.  Be that as it may, these arguments fail because the Immunity Statute is clearly substantive in other critical respects. *See Chase Fed. Hous. Corp.*, 737 So. 2d at 500 n.9 (holding that a statute which "accomplishes a remedial purpose by creating new substantive rights or imposing new legal burdens" should be treated as substantive).

First, the immunity provision in subsection 3(a) is substantive because it attaches new legal consequences to Defendant's actions taken in response to COVID-19—actions that touch on a pre-existing contractual relationship.  "Under Florida law, the legal relationship between a private university and a student is 'solely contractual in character.'" *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (quoting *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)).  Consequently, any law that alters the liability of either party in a dispute arising from this relationship is inherently substantive.  Subsection 3(a) expressly creates a new affirmative defense—immunity—for institutions that previously could be held liable for actions touching on this relationship, presumably including those taken in response to a global pandemic.  Subsection 3(a) "significantly change[s] the affirmative defenses available to defendants" and, hence, is substantive. *Smiley v. State*, 966 So. 2d 330, 335–36 (Fla. 2007) (holding that a statute establishing an affirmative defense "in a broad context that had not previously existed" is substantive); *see also Walker & LaBerge, Inc. v. Halligan*, 344 So. 2d 239, 243 (Fla. 1977) (holding that immunity from suit is "a substantive statutory right"); *Ramcharitar v. Derosins*, 35 So. 3d 94, 100 (Fla. 3d DCA 2010) (holding that an amendment "reinstat[ing] tort immunity to the detriment of the injured employee" is substantive).

Second, and similarly, subsections 3(b) and (c) are substantive because they confer on educational institutions the affirmative defenses of impossibility and justification, respectively.

Although these defenses are grounded in black-letter contract law and were thus available to defendants—including educational institutions—prior to enactment of the Immunity Statute, they were not automatic. Again, subsections 3(b) and (c) "significantly change the affirmative defenses available to defendants" and, hence, are substantive. *Smiley*, 966 So. 2d at 336.

Finally, subsection 4 substantively changes Florida law as to the documents governing the relationship between a student and a university. Courts have long established that the terms of such a contract may be derived from the very documents barred by this provision. *See, e.g., Sirpal*, 509 F. App'x at 929 ("The[] terms may be derived from university publications such as the student handbook and catalog.'"); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021) ("The terms of a student's contract with the university 'may be derived from university publications such as the student handbook and catalog.'") (citation omitted).

For all these reasons, there is no question that the Immunity Statute, taken as a whole, is substantive rather than merely remedial or procedural.

## B. The Immunity Statute Is Intended to Apply Retroactively

In determining whether to apply a substantive statute retroactively under Florida law, the Court must first examine its text to see if "there is clear evidence of legislative intent to apply the statute retrospectively."[2] *Chase Fed. Hous. Corp.*, 737 So. 2d at 499. The Court interprets statutory language according to its plain meaning, in the context of the entire statute, as assisted by the canons of statutory construction. *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir.

---

[2] The Court discerns "intent" as the "objective meaning" rather than the "subjective intent" of the statute. Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 30 (2012). In this task, the Court is not well served by the dozens of pages of legislative debates filed by Plaintiff. Resp. Ex. 1 & 2 [ECF Nos. 67-1 and 67-2]. *See* Scalia & Garner, *supra*, at 376 ("[T]he use of legislative history poses a major theoretical problem: It assumes that what we are looking for is the intent of the legislature rather than the meaning of the statutory text. That puts things backwards.").

2010). The relevant terms of the Immunity Statute must be construed in a manner consistent with their plain meaning and context. *See id.* The Court therefore turns to the provisions of the statute at issue in this case.

The text of the Immunity Statute begins with the legislative finding that the "current wave" of lawsuits against universities and colleges related to those institutions' responses to COVID-19 is unprecedented. Fla. Stat. § 768.39(1). The Legislature specifically singled out "class action lawsuits that seek tuition reimbursement related to forced online tutelage." *Id.* The Legislature further found "an overpowering public necessity" for the immunity protections granted to educational institutions in the Immunity Statute. *Id.*

Although the Immunity Statute contains no express provision as to retroactivity, the text reveals clear intent that it apply retroactively by targeting specific events and actions already complete at the time the legislation was passed. It addresses lawsuits brought in reaction to "institutions changing the delivery of educational services, limiting access to facilities, or closing campuses during the COVID-19 public health emergency," Fla. Stat. § 768.39(1), and operates to immunize institutions from the consequences of "[r]easonably necessary actions taken while a state of emergency was declared for this state for the COVID-19 pandemic," *id.* § 768.39(3)(a).

The Legislature's use of the past and present perfect tenses throughout the text further reveals retroactive intent—for example, addressing the problem of "educational institutions [that] *had* little choice but to close or restrict access to their campuses," *id.* § 768.39(1) (emphasis added) by immunizing any college or university that "*has taken* reasonably necessary actions" and deeming in-person instruction "to *have been* impossible . . . during any period of time in which such institutions *took* reasonably necessary actions . . . to protect students, staff, and educators in response to the COVID-19 public health emergency," *id.* § 768.39(3)(a), (b)

(emphasis added). The text also refers to events occurring during the declared state of emergency, but by the time the statute was enacted, no emergency orders were in place. *See* Fla. Exec. Order No. 21-102 (eliminating existing state emergency COVID-19 orders as of May 3, 2021); Fla. Exec. Order No. 21-101 (invalidating COVID-19 emergency orders enacted by local governments prior to July 1, 2021). These passages reflect an unmistakable mandate to address the ramifications of past conduct.[3]

Two possibilities remain: either the Immunity Statute is to apply retroactively in all cases, or the statute is to apply to past conduct so long as no action had been filed at the time the law became effective. Subsection (1) suggests that the statute was passed in reaction to the "current wave" of class action litigation and in doing so quotes one such case that was decided prior to enactment. *See Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1214 (M.D. Fla. 2020). Thus, the statute applies retroactively, with no carve-out for pending cases.

### C. Retroactive Application of the Immunity Statute Is Unconstitutional

"If the legislation clearly expresses an intent that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible." *Chase Fed. Hous. Corp.*, 737 So. 2d at 499. This inquiry centers on whether "the statute impairs a vested right, creates a new obligation, or imposes a new penalty." *Menendez*, 35 So. 3d at 877; *see also Chase Fed. Hous. Corp.*, 737 So. 2d at 503 ("[R]etroactive abolition of substantive vested rights is prohibited by constitutional due process considerations.").[4]

---

[3] The Court also notes the absurd result of finding that the Immunity Statute does not apply retroactively—namely, having a law on the books that largely immunizes past conduct but has no retroactive effect. Courts are to avoid interpretations that would render legislation a nullity or lead to absurd results. *Wollard v. Lloyd's & Cos. of Lloyd's*, 439 So. 2d 217, 218–19 (Fla. 1983) ("It is a basic tenet of statutory construction that statutes will not be interpreted so as to yield an absurd result.").

[4] By contrast, a law that is "procedural or remedial in nature" constitutionally may be applied retroactively without implicating due process. *Maronda Homes*, 127 So. 3d at 1272. But as discussed *supra*, the Immunity Statute is substantive.

"Article I, section 2 of the Florida Constitution guarantees to all persons the right to acquire, possess, and protect property.  Section 9 of the same article provides that no person shall be deprived of life, liberty or property without due process of law." *Am. Optical Corp. v. Spiewak*, 73 So. 3d 120, 125 (Fla. 2011) (cleaned up).  A "plaintiff's right to commence an action is a valid and protected property interest" under Florida law, *Wiley v. Roof*, 641 So. 2d 66, 68 (Fla. 1994), and federal law, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause.").  A common-law cause of action becomes a vested right, protected by the due process clauses of the United States and Florida Constitutions, "[w]hen the cause of action accrues."  *Williams v. Am. Optical Corp.*, 985 So. 2d 23, 27 (Fla. 4th DCA 2008), *aff'd sub nom. Am. Optical Corp.*, 73 So. 3d 120.  "[A] cause of action for breach of contract accrues at the time of the breach," *Woodward v. Morell*, 319 So. 3d 47, 53 (Fla. 4th DCA 2021) (quoting *Access Ins. Planners, Inc. v. Gee*, 175 So. 3d 921, 924 (Fla. 4th DCA 2015)) (alteration in original), and a cause of action for unjust enrichment "accrues 'when the last element constituting the cause of action occurs,'" *Cleveland Clinic Fla. v. Children's Cancer Caring Ctr., Inc.*, 274 So. 3d 1102, 1105 (Fla. 4th DCA 2019) (quoting Fla. Stat. § 95.031(1)).

Therefore, if Plaintiff's causes of action accrued before the Immunity Statute became effective, they are vested property interests subject to constitutional protection.  The Court will consider each claim separately.

### i. Plaintiff's Breach-of-Contract Claim Is a Vested Right

Regarding his breach-of-contract claim, Plaintiff's cause of action accrued when Defendant allegedly breached their contract—more than one year before the statute was passed—by ceasing to provide in-person instruction and campus access.  Of course, before he

can demonstrate a breach of contract, Plaintiff must prove the existence of a contract. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (elements for breach of contract are (1) existence of a contract, (2) breach of the contract, and (3) damages from the breach). As of the alleged breach, a legal relationship existed between Defendant—a private university—and Plaintiff—its student. And as discussed *supra*, "the legal relationship between a private university and a student is 'solely contractual in character.'" *Sirpal*, 509 F. App'x at 929 (quoting *Jallali*, 992 So. 2d at 342). So, there can be no question that a contract existed between the parties to this case. The only issue is what the terms of that contract were. Under settled Florida law, such terms may be derived from university publications such as the student handbook and catalog. *E.g.*, *Sirpal*, 509 F. App'x at 929; *Rhodes*, 513 F. Supp. 3d at 1357. The Immunity Statute places a new burden on plaintiffs in a specific subset of cases to prove the terms of their vested contractual rights without using these documents that, prior to the statute, were accepted as a source of contractual obligations.

Defendant heavily relies on the entirely circular argument that there was no breach—and hence no vested interest—because there was no contract *for in-person education*. *See* Mot. at 14–20. The Court will not hold that the Immunity Statute does not impair a vested right in a breach-of-contract claim because the Immunity Statute ties Plaintiff's hands in establishing the terms governing that very claim.

Defendant argues in the alternative that "a contract that violates public policy or the law cannot be the basis for a contract claim." Mot. at 15. Thus, says Defendant, "[n]o contractual cause of action could have accrued" at a time when Broward County officially forbade the activities that form the basis of Plaintiff's claim. *Id.* However compelling Defendant's invocation of impossibility as an affirmative defense may be, the Court is constrained by the scope of the instant Motion. And because the parties' contract violated no public policy or law

at the time it was formed, this argument has no bearing on the Court's analysis as to whether or when Plaintiff's cause of action vested.

### ii. *Plaintiff's Unjust Enrichment Claim Is a Vested Right*

As to his unjust enrichment claim, Plaintiff's cause of action also accrued more than one year before the statute was passed when Defendant retained the benefit—tuition—Plaintiff conferred after ceasing to provide in-person instruction and campus access. *See Rollins*, 951 So. 2d at 876 (elements for unjust enrichment are (1) plaintiff conferred a benefit on defendant, (2) defendant knew of the benefit, and (3) defendant accepted or retained the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without paying fair value).

Defendant contends that Plaintiff has no vested right in his unjust enrichment claim because it is a claim grounded in the common law.[5]  Mot. at 16.  Defendant is mistaken. Florida law recognizes an important distinction between inchoate causes of action under the common law—i.e., those that have not yet accrued—and those that have accrued and thus become vested rights. *See Williams*, 985 So. 2d at 27–28.  When a common-law cause of action accrues, it transcends "a mere expectation based on an anticipation of the continuance of an existing law." *Clausell v. Hobart Corp.*, 515 So. 2d 1275, 1276 (Fla. 1987).  It becomes a vested right. *See Williams*, 985 So. 2d at 30 ("Constitutionally, a new statute becoming effective after a cause of action has already accrued may not be applied to eliminate or curtail the cause of action.").

---

[5] The Court is unsure as to why this argument should be considered unique to this claim, given that contracts are also grounded in the common law.

Page 14 of 16

### iii. The Immunity Statute Impermissibly Impacts Plaintiff's Vested Rights

If given retroactive effect, the immunity provision in subsection (3)(a), in concert with the evidentiary provision in subsection 4, would indeed "adversely affect" and even "destroy" Plaintiff's "vested right" in his ability to recover on claims that were available before the statute was enacted. *Maronda Homes*, 127 So. 3d at 1272. It "would abolish actions that have accrued under the common law" and thus "would offend due process." *Id.* at 1275. Therefore, the Court finds that it cannot be retroactively applied to bar Plaintiff's claims for breach of contract and unjust enrichment.[6]

## CONCLUSION

Because retroactive application of the Immunity Statute would violate due process by impairing Plaintiff's vested rights in his causes of action, the statute cannot bar Plaintiff's claims.[7] *See Williams*, 985 So. 2d at 32. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 66] is **DENIED** without prejudice to the parties to file any further dispositive motions. The case will be reset for trial by separate Order.

---

[6] In weighing the constitutional permissibility of retroactively applying a statute, the Court may consider impairment of a vested right (as a matter of due process) and impairment of contractual obligations (as a matter of contract rights). *See Menendez*, 35 So. 3d at 877 & n.4. Although intertwined in this case, these are separate considerations requiring separate analyses. Having determined that retroactive application of the Immunity Statute would unconstitutionally impair Plaintiff's vested right in his cause of action for breach of contract (and unjust enrichment), the Court need not reach the issue of whether it would unconstitutionally impair Defendant's contractual obligations.

For the same reason, the Court need not reach Defendant's other arguments as to whether the Immunity Statute's exceptions apply, whether Plaintiff has a vested right in remedies or procedures, and whether the Immunity Statute restricts Plaintiff's access to courts. Defendant's final argument as to Plaintiff's burden of proof in light of subsection 7 of the Immunity Statute is inapposite at this stage of the proceedings.

[7] Based on these findings, the Court need not reach Plaintiff's direct challenge to the constitutionality of the Immunity Statute. Indeed, however unlikely it may seem at this point, prospective application of the statute in light of some future COVID-related public health emergency may not be subject to the same retroactivity concerns raised in this case.

As a final note, the Court is aware that this case has been pending for some time. In the interest of judicial economy, the parties are reminded that the Court was constrained by the scope of the instant Motion. Thus, the Court could not *sua sponte* address any affirmative defenses or other issues raised in prior pleadings, many of which the Immunity Statute attempted to codify, and many of which are best decided at the summary judgment stage. *See Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335 (S.D. Fla. 2020).

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 16th day of February, 2022.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**