UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-61431-RAR

**LEO FERRETTI**, *individually and on behalf of all others similarly situated*,

 Plaintiff,

v.

**NOVA SOUTHEASTERN UNIVERSITY, INC.**,

 Defendant.
_____/

## ORDER GRANTING IN PART MOTION TO DISMISS

 For many institutions of higher education, the fight against COVID-19 was merely prelude to the legal battle waiting on the other side. Hundreds of colleges and universities have faced class actions alleging breach of contractual obligations in the wake of a global pandemic. In most cases, courts have wrestled with the question of whether the express or implied contractual terms governing the relationship between these schools and their students allowed for a mid-semester campus closure and a switch from in-person to online course delivery—actions mandated by most, if not all, state and local jurisdictions in the early days of the pandemic. What makes this case unique is that the specific terms governing the contractual relationship between Nova Southeastern University and its students allowed for the kind of flexibility in course delivery—if not closure of campus access—necessitated by COVID-19. Consequently, Defendant's Limited Motion to Dismiss First Amended Class Action Complaint ("Motion") [ECF No. 87] must be **GRANTED IN PART** as set forth herein.[1]

---

[1] The Motion is fully briefed and ripe for adjudication. *See* Pl.'s Opp'n to Def.'s Limited Mot. to Dismiss Pl.'s First Am. Class Action Compl. ("Response") [ECF No. 88]; Def.'s Reply in Supp. of Mot. to Dismiss ("Reply") [ECF No. 89].

## BACKGROUND

The Court assumes that the parties are familiar with the factual background of this case, as set forth in the Order Denying Motion for Dispositive Relief under Florida Statute Section 768.39.  [ECF No. 76]; *Ferretti v. Nova Se. Univ., Inc.*, No. 20-61431, 2022 WL 471213 (S.D. Fla. Feb. 16, 2022) ("*Ferretti I*").  In *Ferretti I*, the Court weighed the effect of the Florida Immunity Statute for Educational Institutions for Actions Related to the COVID-19 Pandemic ("Immunity Statute"), Fla. Stat. § 768.39, on this action.  The Court found that the Immunity Statute is substantive—rather than procedural or remedial, *Ferretti I*, 2022 WL 471213, at *7–9—and that the Florida Legislature intended that it immunize actions taken before the bill was passed, *id.* at *9–11.  But because it substantively alters the property rights of parties to existing contracts, the Court held that the Immunity Statute is constitutionally impermissible.  *Id.* at *11–15.

In ruling on the Immunity Statute, the Court found that, under Florida law, "the legal relationship between a private university and a student is 'solely contractual in character,'" *Ferretti I*, 2022 WL 471213, at *13 (quoting *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013)), and thus acknowledged that "there can be no question that a contract existed between the parties to this case," *id.*  But owing to the limited scope of the pleadings, the Court went no further in considering the implications of this finding outside the context of the Immunity Statute.  *Id.* at *16.  And although the Court further noted that the terms of such a contract "may be derived from university publications such as the student handbook and catalog," *id.* at *13 (citing *Sirpal*, 509 F. App'x at 929; *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021)), it would have been inappropriate at that stage of the proceedings for the Court to inquire whether such terms could be derived to

establish a contract for an in-person, on-campus educational experience as alleged by Plaintiff, *id.* at *16.

In the wake of *Ferretti I*, Defendant moved to file the instant Motion with the "limited, highly focused" scope of reviewing certain terms in Defendant's written publications and determining whether they form the basis for a contract between Plaintiff and Defendant such that Plaintiff's claims can be adjudicated without the need for discovery. [ECF No. 78] at 1–2. The Court granted that motion, [ECF No. 79], and Defendant filed the instant Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. With the aid of this additional pleading and its related briefs, the Court is now equipped to apply the rules of black-letter contract law to this case and answer dispositive questions it could not reach in *Ferretti I*.

## ANALYSIS

Defendant moves to dismiss both of Plaintiff's claims in this action: breach of contract (Count I) and unjust enrichment (Count II). Mot. at 4, 16. The Court addresses each Count independently.

### I. Breach of Contract (Count I)

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). In *Ferretti I*, the Court found the existence of a contract based on Florida case law establishing that legal relationships between private universities and their students are contractual in character. *Ferretti I*, 2022 WL 471213, at *13 (quoting *Sirpal*, 509 F. App'x at 929). The Court stopped short of attempting to interpret the contract, which is typically inappropriate at the motion to dismiss stage. However, "where the contract . . . terms are unambiguous, a court may properly consider

a motion to dismiss for failure to state a claim for breach" of contract. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014). Defendant having moved to dismiss, the Court may now examine the parties' contract to determine whether its terms are unambiguous.

"Contract interpretation principles under Florida law require [courts] to look first at the words used on the face of the contract to determine whether that contract is ambiguous. It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345, 1350 (11th Cir. 1999) (internal citations omitted); *see also GE Med. Sys. S.C.S. v. SYMX Healthcare Corp.*, No. 18-20922, 2021 WL 821433, at *11 (S.D. Fla. Mar. 4, 2021) (noting that it is well settled that "[w]hen interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent"). Neither party alleges the existence of an integrated contract whose four corners embrace the terms of the parties' relationship, so the Court must look elsewhere.

Under Florida law, a private university's relationship with its students is an implied-in-fact contract arising from the university's rules, regulations, regimen, and publications at the time of enrollment. *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008). The terms of this implied-in-fact contract "may be derived from university publications such as the student handbook and catalog." *Ferretti I*, 2022 WL 471213, at *13 (citing *Sirpal*, 509 F. App'x at 929; *Rhodes*, 513 F. Supp. 3d at 1357). Plaintiff's First Amended Class Action Complaint ("FAC"), [ECF No. 25], refers to Defendant's Graduate Catalog and Student Handbook ("Catalog") and policies, as well as the Student Enrollment Agreement signed by Plaintiff. *See, e.g.*, FAC ¶ 35. Because these publications are central to Plaintiff's FAC and thus ripe for consideration, the Court may examine their plain language to determine whether their relevant provisions establish unambiguous terms that support or refute Plaintiff's claims for

breach of contract. *See Starship Enters. of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013).

Plaintiff asserts that he and putative Class Members contracted with Defendant for "live on-campus instruction and access to campus facilities" in the Winter 2020 term. FAC ¶ 1. Although lumped into a single count, Plaintiff essentially alleges the existence of two separate contracts with Defendant: (1) one for "live, in-person classes" in exchange for "tuition and fees," *id.* ¶ 116; and (2) another for "access to campus activities, facilities, resources, and services" in exchange for "separately itemized fees" or simply "fees," *id.* ¶¶ 4, 108. Plaintiff alleges that Defendant breached the first contract by "suspending all in-person classes" and switching to online course delivery and breached the second with the related but distinct action of cancelling or closing access to its facilities, events, and services. *See id.* ¶¶ 2, 110. Plaintiff does not specify precisely how much he paid in tuition and fees, nor does he delineate which separately itemized fees went toward classes and which went toward access. *See id.* ¶ 58.

### a. *Defendant's Switch from In-person to Online Course Delivery*

Plaintiff cites the "Course Delivery" summary in Defendant's Catalog to support the conclusion that "face-to-face" classes were "principally" to comprise "regular classroom instruction." FAC ¶ 29. But that very summary contains the following language: "Face-to-face classes *may also include some online instruction in addition to regular classroom instruction.* Some assignments may be administered through internet-based sites associated with class textbooks or through the university's online course management system. Instructors will explain specific requirements for participation in online components." Mot. at 7.

Defendant contends that this language unambiguously left to Defendant's discretion the "specific requirements" as to how much of any "face-to-face" course would be delivered via online instruction and how much would be offered through classroom instruction. Mot. at 7.

The Court agrees. Plaintiff can point to no specific language in the Catalog, or any other publication referenced in the FAC, to establish countervailing unambiguous terms. Rather, Plaintiff's arguments as to the existence of a contract for "principally" in-person classroom instruction boil down to the following: (1) an implied contract for in-person classes should be derived from Defendant's prior course of conduct; (2) Defendant's Catalog refers to "face-to-face" classes in various places as being "in person," "on campus," "in class," "in the classroom," "in-class lectures," and "traditional face-to-face classroom instruction"; and (3) Plaintiff expected more in-person, on-campus instruction than he ended up receiving. Resp. at 6–15.

In support of his first argument, Plaintiff cites a case from Delaware, a case from Connecticut, a case from this district, and a case from this Court where defendant universities' motions to dismiss were denied. Resp. at 6–7 (citing *Ninivaggi v. Univ. of Del.*, 555 F. Supp. 3d 44 (D. Del. 2021); *Wnorowski v. Univ. of New Haven*, 552 F. Supp. 3d 308 (D. Conn. 2021); *Gibson v. Lynn Univ.*, 504 F. Supp. 3d 1335 (S.D. Fla. 2020); *Rosado v. Barry Univ.*, 499 F. Supp. 3d 1152 (S.D. Fla. 2020)). The facts of all four cases are similar to those presented here, and each court had to decide whether an amalgamation of evidence including university publications coalesced into an unambiguous contract for in-person course delivery. *See Ninivaggi*, 555 F. Supp. 3d at 49–51; *Wnorowski*, 552 F. Supp. 3d at 314–18; *Gibson*, 504 F. Supp. 3d at 1339–42; *Rosado*, 499 F. Supp. 3d at 1157–58. And in each case, the court held that the provisions contained in such evidence were not specific enough to say, one way or the other, whether the parties contracted for traditional classroom instruction. *Id.* "Since there are multiple reasonable readings," expounded one court, "the contract is ambiguous as to whether there was a specific promise by [defendant] that students who paid tuition to take in-person classes and paid fees associated with campus resources would receive an on-campus education." *Wnorowski*, 552 F. Supp. at 315. As such, each court held that a factual inquiry considering all relevant evidence,

including course of conduct, was necessary to clear the ambiguity and illuminate the contractual terms.  *See Ninivaggi*, 555 F. Supp. 3d at 49; *Wnorowski*, 552 F. Supp. 3d at 315; *Gibson*, 504 F. Supp. 3d at 1340–41; *Rosado*, 499 F. Supp. 3d at 1158.

But there is one critical difference between those four cases and this one: no other defendant cited language in its Catalog unambiguously providing for flexibility in its course delivery.  There is only one reasonable reading of the provision that "[f]ace-to-face classes may also include some online instruction in addition to regular classroom instruction," Mot. at 7: Defendant could choose to "include some online instruction" for any reason—for foreseeable reasons such as a hurricane or instructor illness or unforeseeable reasons such as civil unrest or a global pandemic.  Consequently, it would be inappropriate for the Court to consider extrinsic evidence such as Defendant's course of conduct.  *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) (holding that "[e]xtrinsic evidence of the parties' subjective understanding is not consulted unless the contract is ambiguous").

The Court acknowledges Plaintiff's concern that this finding may lead to a slippery slope in which a university's "contract[ual] obligation for in-person, on-campus instruction would be satisfied after just one in-person class session, with the balance held exclusively online" and that "[w]hat actually happened [here] is only a difference of degree."  Resp. at 8.  But Florida law provides a guardrail for such behavior in the form of the implied covenant of good faith and fair dealing, which arises under every implied-in-fact contract.  *See Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999).  Where, as here, "a specific contractual term gives one party discretion in performance under that term, 'the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.'" *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1278 (S.D. Fla. 2009) (quoting

*Cox*, 732 So. 2d at 1097–98). Plaintiff alleges no violation of the implied covenant of good faith and fair dealing, and the Court will certainly not infer bad faith where Defendant took actions in the interest of its students' health and safety and in compliance with governmental mandates.

Plaintiff attempts to support his second argument with the "well-accepted interpretive principle that special or specific provisions in a contract control over general ones." Resp. at 11 (quoting *Eaton v. Principal Life Ins. Co.*, No. 20-0061, 2022 WL 972452, at *6 (M.D. Fla. Mar. 31, 2022)). Unfortunately for Plaintiff, this well-accepted principle works against him in this case. Ordinarily—as in the four cases discussed *supra*—allegations that a university's publications describe "face-to-face" classes as being "in person," "on campus," "in class," "in the classroom," "in-class lectures," and "traditional face-to-face classroom instruction," Resp. at 7, would work to sufficiently plead the existence of a contract for—at the very least—principally in-person instruction at the motion to dismiss stage. But when "face-to-face classes" are *specifically defined* as classes that "may also include some online instruction in addition to regular classroom instruction," Mot. at 7, this provision must control over other language that merely describes the general characteristics of the face-to-face course delivery option.

The Court notes that the Catalog's provision defining "face-to-face classes" is readily distinguishable from the "reservation of rights" provisions schools have used in similar cases as a basis for arguing that their contracts with students allowed them to change anything about their educational services at any time. For example, in *Ninivaggi*, defendant's catalog "reserve[d] the right to revise its policies, fees, and other charges." 555 F. Supp. 3d at 52 (alteration in original). The court held that a general reservation did not control over plaintiffs' specific allegations. *Id.* Here, the situation is the direct opposite: the definitional language cited by Defendant controls over the more general language cited by Plaintiff.

Plaintiff's third argument is of no moment—at least to the extent he alleges that he and other students unilaterally expected face-to-face classes to be offered principally or exclusively in person. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-02994, 2022 WL 1468057, at *23 n.20 (S.D. Fla. May 10, 2022) ("Unilateral and subjective expectations in a transaction cannot be inferred to coalesce into the meeting of the minds required to establish an implied contract."). But even to the extent Plaintiff alleges the language used in Defendant's Catalog and other publications led him to expect that face-to-face classes would be offered principally in person and on campus, such an expectation would be unreasonable. A reasonable person would anticipate that, when faced with a disaster on the scale of COVID-19, Defendant would exercise its discretion to hold face-to-face classes online as allowed under the unambiguous terms of the contract. *See Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1949) (holding that, in considering whether an implied-in-fact contract exists, a court should give "the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto").

Having found no contract for principally or exclusively in-person, on-campus course delivery, the Court need not examine the element of breach. But for the sake of thoroughness, the Court notes, and the parties do not dispute, that the majority of Plaintiff's classes in the Winter 2020 term were held in person and on campus. *See* Mot. at 12–13; Resp. at 16. Only after the world came to a screeching halt in March 2020 did Plaintiff shift to online instruction. *See id.* Thus, the Court agrees with Defendant that "by teaching part of the semester in person and part online, [Defendant] did exactly what it told students it might do, and what they should expect it to do." Reply at 2.

### b. *Defendant's Closure of Access to Campus*

The terms of the parties' contract unambiguously reserved to Defendant the discretion to hold an unspecified portion of face-to-face classes online. The same cannot be said for Defendant's closure of access to campus activities, facilities, resources, and services. As in the case of course delivery, Plaintiff can point to no unambiguous language in Defendant's Catalog or other publications creating a contract for live access to campus. But Defendant also has no specific provisions to rely on. So the Court joins other courts in this district in finding that where neither party can establish unambiguous terms, a factual inquiry is necessary to determine whether the parties' contract contemplated "access to campus activities, facilities, resources, and services" in exchange for "separately itemized fees." FAC ¶¶ 4, 108; *see, e.g.*, *In re Univ. of Miami COVID-19 Tuition and Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1353 (S.D. Fla. 2021); *Gibson*, 504 F. Supp. 3d at 1339. All that is necessary at the motion to dismiss stage is that "Plaintiff cite[] to portions of [Defendant's] publications and policies that suggest . . . students would have access to campus facilities and activities." *Gibson*, 504 F. Supp. 3d at 1339. Plaintiff does so, and the Court need comment no further.

## II.  Unjust Enrichment (Count II)

Defendant maintains that Plaintiff's unjust enrichment claim should be dismissed because (1) the Court's finding that an express contract exists necessarily precludes Plaintiff's unjust enrichment claim, and (2) the Court's finding that Plaintiff has a vested right in his contract claim necessarily precludes Plaintiff's unjust enrichment claim. Mot. at 17–19.

Unjust enrichment may be properly pled where "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Gibson*, 504 F.

Supp. 3d at 1344 (quoting *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009)).  Although a party may recover under an unjust enrichment theory only when there is no valid express or implied-in-fact contract, unjust enrichment and breach of contract may be pled in the alternative where one of the parties asserts that the contract governing the dispute is invalid.  *See Gibson*, 504 F. Supp. 3d at 1344; *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011).

The Court finds that a point of clarification is in order.  Defendant is correct that in *Ferretti I*, the Court found that "the legal relationship between a private university and a student is 'solely contractual in character'" and thus acknowledged that "there can be no question that a contract existed between the parties to this case."  2022 WL 471213, at *13 (quoting *Sirpal*, 509 F. App'x at 929).  But the Court did *not* find the existence of an express contract, as Defendant states, *nor* that of an implied-in-fact contract for the subject matter Plaintiff alleges as the basis for his unjust enrichment claim—*i.e.*, an in-person, on-campus educational experience.[2]  Thus, under the Court's holding in *Ferretti I*, Plaintiff would be allowed to proceed with an unjust enrichment claim pled in the alternative to a breach of contract claim.

---

[2] For this reason, the Court further notes that Defendant's attempt to distinguish *Ferretti I* from *Gibson* misses the mark.  Defendant contrasts the Court's finding in *Ferretti I* that "there can be no question that a contract existed between the parties to this case" with the finding in *Gibson* that "an undisputed contract had 'yet to be established.'"  Mot. at 16.  But Defendant paints the *Gibson* finding with too broad a brush.  In both cases, the Court echoed the well-established case law that "the legal relationship between a private university and a student is solely contractual in character."  *Ferretti I*, 2022 WL 471213, at *4; *Gibson*, 504 F. Supp. 3d at 1339.  The Court's mere acknowledgement in *Ferretti I* that there could be "no question" as to the nature of Plaintiff's relationship with Defendant did nothing to "establish" at the time that any terms of the parties' contract had been derived.  In both cases there was a contract, and in both cases the terms had yet to be established.

Here, the Court has found a valid implied-in-fact contract which contemplated that Defendant may hold an unspecified portion of face-to-face classes online. *See supra* Analysis I.a. So, to the extent Plaintiff's unjust enrichment claim is based on the same subject matter as his breach of contract claim regarding in-person, on-campus classroom instruction, it cannot proceed. *See Cent. Magnetic Imaging Open MRI*, 789 F. Supp. 2d at 1317. But the Court having found no unambiguous terms creating a valid contract for live campus access, it would be premature to dismiss Plaintiff's unjust enrichment claim as to Defendant's closure of access to campus activities, facilities, resources, and services. *See Gibson*, 504 F. Supp. 3d at 1344; *Salerno v. Fla. So. Coll.*, 488 F. Supp. 3d 1211, 1218 (S.D. Fla. 2020); *Rosado*, 499 F. Supp. 3d at 1160. Plaintiff alleges that he paid "separately itemized fees" in exchange for "access to campus activities, facilities, resources, and services" that Defendant did not provide. FAC ¶¶ 4, 108. At this stage of the litigation, these allegations are sufficient to state a plausible claim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion [ECF No. 87] is **GRANTED IN PART**.

2. Counts I and II are **DISMISSED** *with prejudice* as to any claim for tuition, as well as any claim for fees to the extent they were paid in exchange for in-person, on-campus classroom instruction, and ***without prejudice and with leave to amend*** as to any claim for separately itemized fees to the extent they were paid in exchange for access to campus activities, facilities, resources, and services.

3. Plaintiff shall file his Second Amended Complaint on or before June 22, 2022.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 23rd day of May, 2022.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**